et al. at the lease by Nathan Karstad. Your Honor, good afternoon. Justice O'Brien, good afternoon. Counsel. My name is Carl Buck and I represent Engineered Abrasives. The appellant in this case may please the court. Your Honors, the issue in this case is whether or not the trial court properly granted a motion for involuntary dismissal under Section 619A6 on the basis of an alleged release contained in the settlement agreement from a different case. Engineered Abrasives would argue to this court that that decision was wrong because the trial court focused solely on one provision within the agreement and did not consider the agreement in its entirety. And because the judge focused only on that one provision, there was a mistake. She should have considered the entirety of the agreement because it would have led to the conclusion that the case before you was not meant to be included in that settlement agreement or in that release. By way of a factual summary, Engineered Abrasives is a family-owned business that treats metal products. They treat them in their factory and they also create machines that treat metal products that go into production facilities like Ford and General Motors. The defendants, Edward and Edward C. Brashearmy, were father and son, employees of the plaintiff and left the employment of the plaintiff. And at that time, the plaintiff sought to enjoin the defendants from taking with them certain trade secrets under the Illinois Trade Secrets Act. The plaintiff filed a complaint. A preliminary injunction was obtained. Following the entry of the preliminary injunction and joining the defendants, there were two rules to show cause that were issued against them for violating that order. There was a subsequent motion for temporary restraining order to restrain the defendants from contacting the customers of the plaintiff. That preliminary injunction was granted. There was a subsequent rule to show cause for violating that order. The following year, there was a stipulation by the defendants with regard to those rules to show cause and the case proceeded on. Prior to the conclusion of the discovery, the defendants tried to dissolve the motions, or excuse me, the preliminary injunctions that were entered against them. That was denied by the trial court. And at the conclusion of discovery, the parties engaged in motion practice, cross motions for summary judgment, and those were argued on June 9th of 2015. That date's important because on June 3rd of 2015, in an unrelated federal court case, there was a settlement conference. That federal court case was between the same plaintiff and the same defendants, and it was an allegation of essentially defamation based upon an email that one of the defendants had sent to a customer of the plaintiff alleging that the plaintiff's products were unsafe. That claim was filed in federal court. It was based on the email that was sent by the defendant. The plaintiff in that case was represented by different counsel. The defendants were represented by different counsel. And as the settlement agreement that's at issue before the court today articulates, that claim was defended under an insurance policy. So there was insurance for the claim of defamation brought against the defendants in that federal court action. So on June 3rd, 2015, there was a settlement conference in the federal court case, and the parties came to an agreement as to how to settle the federal court case. And they entered into the settlement agreement, and that's the settlement agreement that we have that's in dispute. Exactly. And so before a court looks at intent in a contract, they first have to find an ambiguity before you get there. Otherwise, you look at the four corners of the document. What is it that's ambiguous about this release? What's ambiguous about this release is if you look at the release itself, and your question tees up exactly what the trial court did. The trial court focused on the Goodman case and then looked at the release language, which is in Section 8 of the agreement, and said, well, if you look at that, it says, including but not limited to. It has that including but not limited to language in it. However, if you go back into the settlement agreement, in one part of the settlement agreement, the action is defined as the federal court action. There's an additional party that's included. Karen Reshremi is a defendant in the federal court case. She's not a party in the state court case. Further, in the recitals, they reference the insurance policy and the insurance claim. They go on to say that in five days, the case is going to be dismissed by way of stipulation. And those actions, and they kind of play out later on in the case, each one of those things goes to show that there was no intent by the plaintiff to include the state court case in that settlement agreement. Well, but nonetheless, the plaintiff entered a release that says, it released from all causes of action of every nature, character, and description, whether known or unknown, suspected or unsuspected, which it ever had, now has, or may hereafter claim to have, by reason of any matter or circumstance whatsoever arising or occurring prior to and including the date of the agreement, including but not limited to the claims in this action. But not limited to the claims in this action. I mean, that's, you know, I used to be a civil, I did defense work, and this is standard, you know, broad release language, and there's nothing ambiguous about it. If you read that language in seclusion, I would agree with you. It does not appear to be ambiguous. When you consider the four corners of the document and all the language contained within the document, referencing the action as the federal court action, referencing the parties, referencing the actions that they're going to take, the absence of any type of injunctive relief that was already obtained in the state court case, I would represent to the court that that's what causes you to say, well, wait a minute now, then why the language including but not limited to? Well, that's the issue that we're getting to. And to the extent that this court were to say, well, we're going to reverse the trial court, it wasn't included, our argument is the trial court should have conducted an evidentiary hearing. We asked the trial court to conduct an evidentiary hearing, and we didn't have an evidentiary hearing. And that is the type of evidence that would be presented to the trial court, that the trial court would then have the ability to assert. You don't have an evidentiary hearing until there's a ruling as a matter of law that the contract is ambiguous. You don't look outside the document for ambiguities. You look inside the document and see, is there an ambiguity, right? And then, and only then, if you find an ambiguity, do you look at parole letter. Understood, Your Honor. And when you look at some of the other cases that we cited, the Hoffman case, the farm credit case, and we cited a number of cases in there, for instance, in the banking world, you know, there were several cases where an individual had two separate loans with the bank. One loan defaulted. That's Hoffman and farm credit, for instance. One loan defaulted. They resolved that default. And there was language in there that was omnibus, much like you have here. In fact, we put the Hoffman case and this case side by side. And it has the including but not limited to language in it. And in those cases, the person that had the loan went on to say, well, you've released me from my second loan. I don't have to pay you on that. And the court said, no, no, no, that's not what was intended by that. Because you clearly, if you wanted to have that second loan released, you would have referenced it. In this agreement, you only referenced this particular case. And that's what you have here. You only have reference to the federal court case in the recitals, in the actions that are to be taken. But these parties are litigating all over the place against each other, so to speak. And then in the fact that you say referral to the action, and then, you know, the action is this case. The action, the action, the action. And that's defining the contract and the relief as this case. But then you say, including but not limited to the claims and defenses set forth in this action, which on its face seems to presume that we're talking about those other cases, too. We're going to have an omnibus settlement here. We're going to get rid of them all. And on its face, that's what that language seems to say. Taken by itself, I would agree with you. That's what it seems to say. But that's why when you look at the other language that's contained within the agreement, and it only says that particular case. So how would you read that? You would read it to mean the causes of action related to that claim. So, for instance, in some of the cases that were cited by the defendant where the releases were upheld, you had transactional issues, okay? So it was an individual settled an auto accident claim. That's the BEDAC case. They settled an auto accident claim, and they wanted to bring an additional claim for property damage. And the court said, no, you settled that. You can't bring that claim because it all arose out of one thing. These are two separate things. The case for the Illinois Trade Secrets Act, you know, filed obviously three years earlier, involved trade secrets, involved product, involved computer-assisted drawings that were taken, involved contacting customers, involved the selling of a product without the authorization. Those claims were separate and distinct. So to say that the language that says, including but not limited to, refers to every claim that they've ever had against each other from time immemorial, because if I were to take your… That's what the contract, that's what the release language says, that we have before the date of this release, before this date. Causes of action of every nature, character, and description, whether known or unknown, and yadda, yadda, yadda, by reason of any matter, cause, or circumstance whatsoever. Now, that's about as broad as you can get. And it's kind of boilerplate release language, just because generally I used to hand plaintiff's lawyers some pretty big checks during the days. You want to make sure that this plaintiff never darkens your doorway again. At least with any cause of action that occurred before the date, they get the money. And, you know, it seems to me that the plain language, when you say, well, if you read it, oh, it talks about this action, well, I don't see how this language could be finer. That this is not limited to this action, but any claim you might have. And especially if you look at the parole evidence, you're all litigating against each other in the circuit court, the district court. So they knew of these other claims at the time, and yet still enter this particular release. I agree with you that they knew about it, but singularly being aware of it, when you, again, I would refer to focusing only on that particular part of the agreement, and that's why each one of the cases, when it talks about, when you have this type of situation where, you know, you have two separate claims, you've settled one claim, you still have this other claim out here, like the bank loans, for instance, you don't intend to release those. I would argue to you that it would have been easily enough to define the action, because, you know, to your point, they knew the other case numbers, they knew the other federal court case number, they knew the state court case number. Why wouldn't you define the actions as this action, this action, and this action, if that was your intent? Clearly, they didn't intend to do that, and that's our argument, that creates the ambiguity. What is the action? What are all the claims related to the action? Did they intend to include the state court case where none of the parties that were involved in that case, other than the plaintiff and the defendant, none of the attorneys were present at that settlement conference. None of them knew about it. I shouldn't say, I don't know what the defense knew. On the plaintiff's side, none of them knew about it, until after the event occurred. And the dates are kind of interesting, because, Judge, and this is, again, why I would say that there's ambiguity here in this agreement. So the settlement agreement gets entered on the 3rd. It says the dismissal order will happen five days later. The day they enter the dismissal order, the parties in this case go before the trial court judge and argue motions for summary judgment. And the judge takes the motions for summary judgment under advisement. There isn't a stipulation, like you see in the plaintiff's response briefly, where they asked to have it included. I don't object to it. They had a stipulation, a motion, a joint motion to dismiss, and a stipulation to dismiss based on the agreement. That wasn't presented in the state court case. Why? Because nobody intended for there to be one. So when you start to look at the facts and circumstances of this case, and I understand from a legal perspective, how do you get to ambiguity, and I understand that's problematic for us. That language is all-inclusive. I've seen that. I've read that boilerplate language myself a thousand times. But when you look at the recitals and the way that it was crafted, focusing in on that federal court action, that limits it to the claims and the circumstances arising out of that action, not the other litigation that was pending, and certainly not the other litigation that was pending in the state court. Related to the Illinois Trade Secrets Act, where the primary relief was injunctive in nature, which doesn't have necessarily a monetary value. It's injunctive in nature. So are you arguing basically that there's just a mutual mistake in this language, and nobody intended to do it, or unilateral mistake on your client's part? There's clearly a mistake. Again, I focus to those operative facts where the agreement gets entered before the motions for summary judgment are done. This court, in their practice, has been aware that if you have motions for summary judgment and you settle a case, you don't go in there and waste the court's time doing arguments for summary judgment or conducting a trial and so forth. You settle a case, you settle a case, you dismiss it. And that didn't happen in this case. Why? Because nobody intended it. Two minutes, please. Thank you. So, Judge, clearly a mistake occurred. Clearly it was not intended. We would point to some of the operative facts that are plain on the face of the agreement within the four corners, which are that the parties aren't the same, that the actions define, that it references specifically the insurance and the insurance relief that's available. There's a five-day dismissal provision in there. There's no reference to injunctive relief. There's no reference to the state court action. Often attorneys that are involved in cases are signatories to those agreements. If there's other cases, we're not signed on there anywhere as having consented to it. There's no reference to the state court action. And on the follow-up, there's no follow-up action. So there is no stipulation in the state court. There is no joint motion to dismiss. So we would ask that this court reverse the trial court and send it back to the trial court for that evidentiary hearing relative to the evidence that would establish that it was not intended to be included. Thank you. Thank you, Mr. Buck. Mister, is it Carl Scott? That's correct. Thank you. Good afternoon. May it please the court, my name is Nathan Carl Scott, and I'm here on behalf of the appellees. Simply put, the circuit court, Judge Petra Garo, she reached the correct result. In support of that position, I'm going to offer two basic arguments in response today. The first is I'd like to address the ways in which the present case is factually and legally distinguishable from some of the cases most heavily relied upon by EA, but specifically the Hoffman decision, which counsel mentioned in response to some of your questions. And then second, I'd like to address what I consider a more practical explanation as to why it was commercially reasonable to offer a general release here, rather than a specific release in this particular case. As the court in Hampton v. Ford Motor decision pointed out, in Illinois, general release typically covers all claims to which the signing party has actual knowledge. Now, you heard opposing counsel concede that they did have actual knowledge of the additional claims in his argument. Here, however, they're trying to escape this bedrock principle, and the court should not allow them to do that. Fundamentally problematic to EA's position is that they admit to knowing about the claim at the time that they drafted, proposed, reviewed, and executed the general release. That's fatal to their claims. The general release here specifically states that EA hereby releases defendants from any and all rights, claims, debts, liabilities, obligations, damages, costs, attorney's fees, expenses, and as your Honor pointed out, importantly, including but not limited to the claims and defenses set forth in this action. And to be certain, plaintiff's counsel drafted and proposed a broad and extensive release. And the defendants accepted the terms of that release. As Judge Petrangau acknowledged in her decision, the aforementioned language definitely encompasses the claims here. Now, in spite of this, EA directs this court repeatedly to the Hoffman decision as somehow being illustrative of their point. However, the Hoffman case is distinguishable for a number of reasons. Now, first, unlike Hoffman, where the main text of the settlement agreement contained what has been described as a limited scope release under the heading one, tender of deeds in lieu of foreclosure, and a general release provision under section two, release of the released parties, here there is but one release. It's entitled mutual release. It's under section eight of the settlement agreement. Now, in Hoffman, the limited scope release relieved the defined parties from any further liability whatsoever arising out of or otherwise related to, and this is important, the loan documents or properties. In other words, it was limited by its defined terms to the loan documents or properties. And this inherently contradicted the very broad release, which was found in the subsequent paragraph. That's paragraph two, where it said release parties, entitled release parties from any and all liabilities, obligations, claims, actions, causes of action, liens, fees, and demands of whatsoever. Now, that language is much broader. So the court in Hoffman was confronted with one provision, a body of the agreement, which was limited, and a second provision, which was very broad. And it was at that point that they determined that there was an ambiguity. There was a conflict between those two provisions. And although I'm not going to go into them, the Whitlock decision, which I believe counsel referred to as farm credit, I refer to it as Whitlock, and the Corona decision also had that similar conflict. In those two decisions, there was a mention about the language being broad, but also saying these particular claims, and it was the particular language. So here, there's no corresponding limited scope release. There's just a mutual release. And while the mutual release acknowledges that the action arises, it uses, I'm sorry, acknowledges the action it arises out of. It uses expansive language, including but not limited to, rather than anything that would narrow its reach. Accordingly, there's no similar conflict here. It appears that there must have been some misunderstanding, or something even with counsel for your clients, because they went ahead at the hearing summary judgment almost a year later in the state court action. Why weren't the documents of dismissal, the agreed order of dismissal, why weren't they presented in the state court action? I think, if I understand your question, I think that it was slightly more contemporaneous than that. However, there was a motion to dismiss that was brought in the state court action, and I assume you're speaking of the Will County action. Right. Well, the settlement conference and entry of that order June 3, 2015? Yes. And then on June 9, 2016, is the hearing on the motion for the summary judgment? And the release was executed on the second, or is there one year, there's some dates here that don't seem to add up. They have a briefing schedule on December 1, 2015, in the state court action. So is the federal action, I have a date here of June 3, 2015, and then it appears maybe 2016, which is, I'm just trying to determine which one is correct I guess now. It seems that, I don't know, maybe I misunderstood the date. But here it appears as if they were entered in 2015, and then the argument on summary judgment in the state court action happened quite a while later. But you're saying that that isn't the case, that it was just? If I understand your honor, I think you're addressing a point that was raised by the appellant in their opening argument, which was, I think the argument was something along akin to, well, if they intended to do this, why was counsel in Will County at the same time pursuing summary judgment, instead of just simply releasing the case? And I would argue that there was no mistake, at least there was no mistake on our end. What I would point out to the court is that Ms. Joan Long, who was present at the execution of the negotiation and execution of the settlement in the 2015 Northern District of Illinois action, was also an attorney of record in Will County in the action for which we're here today. In fact, she filed her appearance on March 26th of 2014. It's in the record as document C-221. So to the extent there's an argument that these two counsels were pursuing separate tracks and they weren't somehow connected, in fact, Ms. Long was counsel of record in both cases at the time. So it's not just that EA was the same party in both actions, it's also that Ms. Long had an appearance and was counsel of record in both actions. Now, I don't happen to believe that her presence in both actions is dispositive of the issues. I think the focus is really on whether or not the party had knowledge of the additional claims. But to the extent that that argument is being made, I would push back and suggest it doesn't carry much weight because she did know about both actions and she was counsel of record. Am I right? I've got that the federal case was settled on June 2nd, 2016. Does that sound right? And then the summary judgment hearings were June 24th, 22 days later. Yes. All in 2016.  Both of them happened in June of 2016. Yes, that's what I was trying to get at. That's what I'm noting. Them being slightly more contemporary, yes, in my recollection. Going back to the Hoffman case, because it was... Going back to my question, did counsel for your clients on, I guess, the 24th of June, whenever they were arguing the motion for summary judgment, they said, you know, we have a release. This case should be dismissed. Yes, they had not filed their motion to dismiss at that juncture yet, Your Honor. And I wasn't present at the hearing on that day to give me an accounting of the statement. I don't know if there's a transcript. But the motion to dismiss had not been filed until after that. Okay. So going back to the Hoffman decision, I'm unaware of any Illinois case that holds it where there is an uncontradicted general release that it does not release all claims to which the parties have actual knowledge of. Moreover, unlike Hoffman, the general release here is mutual in nature. It states that the defendants hereby release EA from any and all rights and claims, actions, and or causes of action of every nature, character, and description, whether known or unknown, including to, but not limited, the claims and defenses set forth in this action. However, I'd point out that at the time the release was executed, that the defendants had not filed any counterclaims. This, I believe, provides further support for the idea that the language of the agreement contemplates that it will extend beyond those claims expressly set forth in the pleadings. And third, because there is no ambiguity between a specific and general release, there's no need to step outside the four corners of the release to examine parole evidence. And simply put, Jeff Peckman Garrow got this right. Thus, the broad language encompassing the release, with the broad language encompassing the release, we're left only to look at the language which states that EA releases the defendant from any and all claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorney's fees, and expenses. This language encompasses the claims at issue in this case, which include claims for trade secrets, damages, attorney's fees, and costs. Because EA, Mr. Warren, and his counsel, Ms. Long, knew of the claims, and because the judgment, I'm sorry, because the claims fall within the police's broad scope, the release rightly applies to this claim. Now, if I may make my second point briefly, it's that I would like to give some context for why it was commercially reasonable to opt for this sort of broad language here. The first thing I would say is that, as the Illinois Supreme Court has noted in the Rakowski v. Lucente decision, which is cited to at a number of points in, I believe, both briefs, and the intermediate court also seemingly acknowledged the same thing in Miller, there are times when including a list of specific types of actions in a broad release may detract from the broad and general scope of the release. Here, the broad and general release already encompassed those claims to which the parties already were aware of. Thus, in some sense, it would have been redundant to set forth each of the claims into a separate limited scope release. Moreover, considering the cases relied upon by the parties, the most frequent result from setting forth a number of cases or claims and having a broad general release is that it's often used to narrow the coverage of the release to only those claims arising out of the list of actions. Now, as the court mentioned during appellant's opening, at the time the defendants executed this agreement, they had been subject to the dogged pursuit of their former employer for six years. EA had been incredibly litigious. There was the 2013 trademark action. There is the parallel state court action in Will County for which we're here. There's the 2015 bankruptcy adversary proceedings. There's the 2015 defamation case. And then there's also the recently refiled 2017 state court action in Will County, which appears to mirror the prior claims that were dismissed pursuant to this settlement. As such, a broad release with expansive language would seem to be entirely prudent as a means of buying peace and stemming the tide of litigation once and for all. Limiting the language would only assure that another battle would be on the horizon. Well, to get there, we've got to look outside. That's correct, Your Honor. So we only, in that respect, can't look. The only way we get what was commercially reasonable in this case is to find an ambiguity. Otherwise, we don't look outside. Should the trial judge look outside the four corners of the backwoods? I'm in complete agreement, Your Honor. And I only offer that as some context as to why they may have thought this to be a prudent decision. But I agree with you wholeheartedly that to the extent an analysis can be applied, we should only look at the four corners. And if there is no ambiguity within the four corners, as there is no ambiguity here, then the court should not step outside to consider any additional evidence. Well, and I suppose the one exception to that would be if there's a mutual mistake. In other words, if the contract, as written, didn't reflect the agreement of the parliaments. That's correct. I think that is a situation in which it would be appropriate to look outside the four corners of the agreement. But there is nothing in the record that would suggest that there was any mutual mistake. And I would argue that there was no mutual mistake. To the extent that there was a mistake, that it was unilateral in nature. And a unilateral mistake is not sufficient to avoid the terms of an otherwise unambiguous release. And so with that, I ask that the agreement be interpreted as written and that the order from below be affirmed. Thank you very much. Thank you. Mr. Baxton, rebuttal. Thank you, Judge. With respect to the discussion of the case law that we've been having, there does seem to be a little bit of dispute about what the evidence is relative to the issue before the court, which is the scope of the release. We're not trying to invalidate the release in the federal court defamation case. We think the release is fine there. But this is whether or not the defendants have a right to assert the release here in the state court case. And with respect to that, when you go through the cases, while counsel pointed out the issues that were related to Hoffman, the Hoffman court still relied on the fact that, wait a minute, if you wanted to release that other case that you knew about, and there's a long litany of cases that are sent in our brief where there were multiple claims that were known about and the court said, no, those are not released because they weren't specifically referenced. So just being aware of them, I would argue that this court almost creates the presumption that if you're aware of it, you should put it in there. And if you identify a specific claim, which they did here, and then you have broad language, which is just like what counsel was talking about with respect to Hoffman, you are going to have an ambiguity. Because now you've referenced a specific action and you've defined it. And then later on you try to say, and it's all this other stuff as well. And with respect to one of the cases that the defendants relied on, which was Baudette, there's language in that release, specifically in that release, and that was an incident. It was a car accident case. They settled one claim. The plaintiff tried to bring another claim and the court said, no, you've released it. That release contained language that included the provision that this release is all claims, including those not mentioned in this release. So in that case relied on by the defendants, there was a specific statement that said the release included claims that weren't even mentioned in the release. Isn't that what this one says? It doesn't, Judge. It says. They're unknown, including, but not limited to. In this case, it's arose by another name. I would argue to it that it's not because it's qualified by the action, and the action is defined as the specific federal court case. But it says, but not exactly, but it seems to me that it says, again, including, but not limited to the claims and defenses that were in the action. Correct. So what does that include, but not limited to? If there were other claims, for instance, in one of the cases we cited, it dealt with a car dealership and with Snap-on tools. They terminated the dealership agreement, and they were repaid for inventory. The dealership then brought a claim against Snap-on for fraud. They were allowed to bring that claim because those were separate claims. So here, if they were claims related to the dealership agreement for the inventory, they would not have been allowed to bring them. But the court said, no, these separate claims you're allowed to bring. And to your point, I think you were making it earlier about mutual mistake. Let me focus on that for just a second. And just so that we're clear, in terms of the timeline, I believe it was I that created the confusion because the case in federal court begins with a 15. June, I believe if you look at the actual document, June 3rd is what is referenced in the motion to dismiss. June 3rd of 2016 is the agreement, is the settlement agreement. It says it has to be dismissed in five days. June 9th was then the motion for summer judgment. We argued it a week later. And then on June 24th, at the end of the month, they filed their motion to dismiss. So if you look at the document, the document says within five business days of the execution date and entry of the order, the permanent injunction order, EA shall dismiss the action with prejudice, the action with prejudice. So Justice O'Brien's comment, well, where was the joint stipulation and the order dismissing the state court case? You did it in the federal court case. You didn't do it in the state court case. You went in and argued summer judgment. Well, I would argue to you that there is a mutual mistake to the court's question. If they thought that was going to happen in every case, why didn't it happen? Well, because nobody thought it was going to happen, number one, and there was no understanding that the state court claims were going to be dismissed. Did you argue mutual mistake in the trial court alone? Not in that context. We argued the facts related to going outside the four corners in the apparel evidence, but the issue with respect to mutual mistake, we focused on the evidence and the actual facts that we said gave rise not only to the ambiguity but what we thought were the issues relative to apparel evidence. One minute, please. Well, can we reverse a trial court on a basis of an argument not made to the trial court? On de novo review, I think you can consider all of the arguments that were raised, and in this case, the argument that we raised was specifically, Judge, you have to consider apparel evidence, and whether apparel evidence leads you to believe that it was mutual mistake or whether apparel evidence leads you to the conclusion that it was, in fact, not included, the court could find, no, I find it's not included, not because there was a mistake. This is what you guys meant to write. It's the federal court action only. That is what we argued, so I believe that you could. Thank you very much. Thank you, Mr. Buck. Mr. Carlsgott, thank you also. We'll take this matter under advisement. A written disposition will be issued, as I mentioned before, and Judge McGade will be participating in this matter.